**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

In re: Jason J. Scott and Clichelle C. Scott

        Debtors                              Case No. 07-30643-GFK

---------------------------------------------------------------------------------------------------------------

John O. Murrin and DeVonna K. Murrin         Adv. No. 07-03110

        Plaintiffs                              Chapter 7

Clichelle C. Scott , Clichelle , CFO of Accredited
Financial Services, and Jason J. Scott.

        Defendant

---------------------------------------------------------------------------------------------------------------

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION FOR SANCTIONS
(Telephone Hearing Requested or Appearance Waived)**

      John O. Murrin and DeVonna K. Murrin present this Memorandum in opposition to the Motion for Sanctions brought by Clichelle C. Scott and Jason J. Scott. There is no basis for sanctions because the issues appear to have been conceded by the Scotts or not properly addressed by them or not raised in time and in compliance with the procedure and the law governing these matters. Also there are no facts to justify them.

**INTRODUCTION**

      It is undisputed that Plaintiffs, John and DeVonna Murrin, husband and wife, were defrauded out of over $600,000.00, plus $900,000.00 of promised security for that investment in Avidigm Capital Group, Inc. The Scotts admit this in their Memorandum in Support for Sanctions, p. 8. The fraud consisted of misrepresentations of material facts related to the financial status of Avidigm, who controlled Avidigm, security owned by Avidigm and security

- 1 -

intended to be given to the Murrins for their investment.  In truth and fact, it has been determined as outlined and briefed by Plaintiffs previously (incorporated herein as fully set forth hereat, but particularly see Exhibit 74, Affidavit of Bob Gann, the accountant who verified Avidigm gave statements to the Murrins that showed Avidigm was making a profit when it was not), that instead of having a profit as it represented to the Murrins prior to their investment, Avidigm had a significant loss.  Instead of being controlled, owned, and operated by Steven J. Mattson, its CEO, it was being controlled by James Hoffman through his companies, predominately, Accredited Financial Services, Inc. (AFS), whose CFO was Clichelle Scott.   It is also the case that Avidigm, it was alleged,  was left broke while AFS, Hoffman, and Clichelle Scott took money from it.  AFS is shown to have received millions of dollars, believed to be all from Avidigm, and it was basically a sham corporation.

In addition, Avidigm was represented as having certain real estate which it did not have, and therefore could not provide the security it promised to the Murrins.  This also appears to be undisputed.

During the course of Avidigm's existence, it became a tool or vessel for others, particularly James Hoffman, but also Clichelle Scott to profit by having funds pass through it. Millions of dollars went to AFS.  Plaintiffs have alleged that the money siphoned from Avidigm to AFS was not for legitimate payment of expenses, but was, in fact, merely a way to get money out of Avidigm to Hoffman's company and his friends and staff and Clichelle Scott was one of these.

At some point 2005, Clichelle Scott became involved as the CFO of AFS and participated in various fraudulent actions which were documented and or alleged by Plaintiffs in their materials before the court.  Two of the most graphic incidents were the Scotts purchase of the

Oakey properties where both Jason and Clichelle Scott obtained no-money down mortgages on three properties they purchased from Avidigm based upon false representations to lenders. After they sales closed on those mortgages, Avidigm proved a kick-back to the Scotts in the amount of about $60,000 which went to AFS (Hoffman) and some of it retained by both Scotts, Jason and Clichelle. This is money that it was alleged should have been available to creditors and was fraudulent and willful and therefore should be grounds for non-dischargeability. It was alleged that this was at a time Avidigm was close to or was insolvent. Those funds should have gone to Avidigm for its use to pay its creditors and lenders, including the Murrins it was alleged but it did not. Plaintiffs alleged this kind of thing was an intentional, willful act of a fraudulent nature in its pleadings and other Memorandum and exhibits presented in this case. It is believed this kind of conduct constitutes raiding of a company and the creditors have rights against those that purposely, intentionally, and fraudulently raided it. The first step, to hold someone responsible for this is to contest dischargeability.

It was also alleged that she participated in purposely disposing of other funds that may have been available to the Murrins as creditors. For example, Steve Mattson, CEO of Avidigm, had personally guaranteed the Murrins' investment. He had an IRA account which he cashed in and turned the funds over to Clichelle Scott as CFO of AFS. James Hoffman had promised Mattson that he would keep Mattson's money safe for Mattson's during Avidigm's financial troubles to protect it. Instead it was depleted. This was done by depositing it in the AFS account. AFS through checks written and signed by Clichelle Scott dispersed the money out to avoid payment to creditors. Thus, those funds were no longer available to aid the Murrins in recouping their money from Mattson.

Further, Avidigm obtained numerous bank loans and investments to buy foreclosed property. In fact Murrins money was used for this purpose. Instead of paying back the Murrin and other creditors, the money was siphoned out to Hoffman as part of a larger fraudulent conspiracy ring which it was alleged the Scott was a part. This contributed to Avidigm not being able to repay its loans. It was alleged that this was a significant on-going, fraudulent conspiracy of which Clichelle Scott willfully and knowingly entered, willfully and knowingly administered, and through her capacity as CFO of AFS, she willfully and knowingly controlled Avidigm. Her actions involved the commission of fraud and harmed the Murrins in their ability to be paid back because Avidigm was left with no money to pay creditors, including and especially the Murrins.

For some reason, the sufficiency of the facts provided in the Complaint were deemed by the Court to have failed to state a claim. Although the Complaint was criticized for being long and prolixic and possibly emotional, it was not challenged for its accuracy, just its sufficiency in failing to state a claim to prevent discharge.

Prior to the recent Order, the previous Court Order dated January 15, 2008, allowed Plaintiffs to seek leave to amend the Complaint and reserved the right for Defendants to pursue a claim for attorney fees under Fed.R.Bankr.P. 9011. That was a year and one-half ago. The Scotts therefore had a year and a half to comply with that Rule which required, among other things, bringing a motion outlining a case for a frivolous lawsuit or one based upon an improper purpose, describing it with specificity and in particularity, with specific facts, why it was frivolous or brought for an improper purpose and giving the Murrins twenty-one (21) days to dismiss the case or rectify the problem. This is called the "safe-harbor" provision. The Scotts chose not to do this and let a year and one-half go by. Now it is too late to comply.

Rule 9011 (sometimes referred to as Rule 11 since it utilizes the similar wording as used in the Federal Rules of Civil Procedure Rule 11) requires that such a motion be brought separately from any other motion.  This was not done.  The law is clear that a Rule 11 Motion is to brought early in the case so as to deter conduct and is not to be brought after the case is dismissed.  The case was dismissed pursuant to the recent Order of April 10, 2009.  The Order did not resolve the issue of the right to attorney's fees, except to express concern of its propriety, and allowing time for the Scotts to deal with whatever  viability of a claim they might have, apparently acknowledging there was not enough presented to justify attorneys fees.  The Scotts, now after it is too late, elected to make this half-hearted motion to seek attorney's fees or sanctions.  They have dredged up some theories and made their motion. It is without merit and they present no new information to cure it.

In fact, the Scotts' moving papers for sanctions, page 9 of the Memorandum, they admit that they were unable to serve the Motion upon Plaintiffs twenty-one days before filing as required by law.  Again, since the Plaintiffs were never given the twenty-one day opportunity required by the law, they cannot be compelled to pay Defendants' attorneys fees.

Also, in their Memorandum, page 9, the Scotts specifically say "…Defendants have not strictly abided by the 'safe-harbor' dictates of Rule 9011.  Defendants further acknowledge that this procedural deficiency in and of itself would warrant denial of Defendant's Motion for Sanctions.  See <u>In Re Russ</u>, 218 B.R. at 468.  Upon appeal and in the case <u>In Re Russ</u>, 187 F.3d 978 (8th Cir. 1999), the Court of Appeals refused to allow sanctions to follow.  One thing noted was that a service to creditors was provided in his efforts. Murrin too helped the Trustee, and money was obtained for the estate from the Scotts property.

At the bottom of page 8 of their Memorandum, Defendants state "Defendants acknowledge that Rule 9011 sets forth strict procedural requirements on those seeking an award of sanctions." Failure to abide by these strict requirements of Rule 9011 is fatal.

**DISCUSSION**

The Defendants set forth in their brief materials three reasons for their request for sanctions:

1. Rule 9011 allows them sanctions due to frivolous claims.

2. Rule 9011 allows them sanctions due to improper purpose.

3. If the Court finds Defendants procedurally unable to obtain attorney fees under Rule 9011, Defendants alternatively seek sanctions pursuant to Bankruptcy Court's inherent authority under Rule 105 of the Bankruptcy Code.

Since Defendants admit that they did not meet the procedural requirements of Rule 9011, specifically the safe harbor requirements, the issue of awarding sanctions under this provision is moot and cannot occur. The number of cases so holding in state and federal court are legion, conclusive, and fatal. Ridder v. City of Springfield, 109 F.3d 288, 294, n. 7 (6th Cir., 1997); Gibson v. Coldwell Banker Burnet, 659 N.W.2d 782, 789 (Minn.App. 2003); Johnson ex rel. Johnson v. Johnson, 726 N.W.2d 516, 519 (Minn.App. 2007); Johnson, supra, In re The Claims For No-Fault Benefits Against Progressive Insurance Co., 720 N.W.2d 865, 874 (Minn.App. 2006).

The court flagged the issue and reserved the Scotts' right to bring sanctions in its January 15, 2008, Order. Still, Defendants had a year and one-half to bring such a motion, but waited until the case was dismissed before pursuing sanctions. Bringing a Rule 9011 motion for sanctions after a case is dismissed is entirely unforgivable. The right to receive attorney's fees

after a dismissal is not available for reasons set forth above, but also because the purpose of such a rule is to deter sanctionable conduct as early in the proceedings as possible and to save the parties' the time and effort that occurs if a completely meritless, unfounded case is allowed to go forward.  Waiting until the case has been dismissed does not advance the deterrent purpose of the Rule and makes it a punishment.  See Cooter & Gell v. Hartmarx, 496 U.S. at 409, 110 S.Ct. 2462.  Rule 9011 cannot be used as a punishment, as the rule says itself.  Id.

Another reason the Rule 9011 sanctions cannot be allowed at this time is because it requires that the conduct deemed to be in violation of the Rule be specifically described.  Using terms like "frivolous" and "improper purpose" does not describe the "specific conduct" required by the Rules.  The Scotts presented no facts of specific conduct to warrant sanctions against the Murrins.

There is no wrongful conduct in pursuing the right to amend a Complaint to properly plead non-dischargeability when it is pretty much undisputed that Jason and Clichelle Scott received money from Avidigm during mortgage fraud activity related to the Oakey properties and in so doing, bled Avidigm of money.  That activity resulted in the depletion of money in Avidigm.  The Murrins, as creditors (soon to be judgment creditors) have rights to prevent depletion of assets or obtain clawbacks of money misappropriated.  Certain State causes of action, such as fraudulent transfer, would allow a party like the Murrins to set aside such payments under M.S. §513.41 et. seq.  Valid state law claims would attach under Minnesota's Civil Liability for Theft Act, M.S. §604.14, RICO, consumer fraud, breach of fiduciary duty, and similar provisions. Whether the Defendants' actions were willful or not, or they are considered to have converted the Murrins' assets rather than Avidigm's became fine legal issues that apparently resulted in the court finding a failure to state a claim, but that happens to many, many

creditors pursuing a debtor and is part of the legal process.  However, the engaging in efforts to allow non-dischargeability is not sanctionable and in fact authorized by law.   Involvement in a conspiracy can be the basis for non-dischargeability .   See <u>Farmers Sav. Bank v. Anton</u>, 1 F.2d 103, 105 (8th Cir. 1924).  Dishonest and knowingly wrong acts are not dischargeable.  Joint tortfeasors with others engaged in dishonest acts can be a basis for non-discharge.  See <u>Strand v. Brodner</u>, 114 U.S. 555, 561 (1885).  Tangential co-conspirators can be subject to non-discharge. <u>Aetna Casualty v. Markarian</u>, 228 B.R.34 (1st Cir. 1998).  It is just as likely the complexity of the case made it hard to explain easily in any Complaint or the nuances of the discharge law created pitfalls in drafting pleadings that have nothing to do with Murrins engaging in wrongful conduct.

Plaintiffs, pursuing their legal rights against a debtor who had listed them as creditors in their bankruptcy, is a perfectly legal option creditors may take.  Though Plaintiffs pursuing their legal rights may have been frustrating to others, courts have specifically declared that such conduct and similar conduct is not sanctionable. General misconduct per se is not subject to Rule 11 sanctions.  Rule 11 is reserved for improper signing, filing, submitting or advocating of papers.  Fed.R.Civ.P.11(b); <u>United States v. 850 South Maple Street</u>, 743 F.Supp. 505 (E.D. Mich. 1990) (Rule 11 applies to written and signed documents); <u>A. Hirsch, Inc. v. United States</u>, 948 F.2d 1240 (Fed. Cir. 1991) (withdrawal of a motion or use of possibly incorrect procedure not subject to Rule 11); <u>Sowards v. Switch Energy Co</u>., 744 F.Supp. 1399 (W.D. Va. 1990) (general lack of cooperation during litigation not a basis for Rule 11 sanctions).

Silence of the Scotts in producing their Motion without an Affidavit outlining any serious sanctionable activity on the part of Plaintiffs that Rule 9011 would recognize, speaks volumes. For example, Jason and Clichelle Scott did not deny they received money from  Avidigm after

closing on the Oakey properties. They have not pointed to any falsities in the Complaint. These are additional reasons why Rule 9011 sanctions are entirely improper here.

Defendants next resort to the Court's inherent authority to obtain their attorney's fees and costs. That is also entirely inappropriate. To resort to inherent authority because Defendants failed to follow the procedural prerequisite of Rule 9011, is not a basis for award of attorney's fees. Further, the advent and suggestion that a court could use inherent authority to fine a party or control its counsel is stretching, at best, because it is the court's inherent power, not the adverse party's inherent power to evoke it for itself. Plus it would be a rare thing indeed where insufficiency or failure to state a claim would be the basis for the application of a fine based on inherent authority.

Inherent power is the court's to assert and utilize for its own use, not for the purpose of seeing that a party obtain reimbursement of their attorney's fees.

There are extreme cases where reimbursement of attorney's fees and utilization of inherent authority has been used, such as in Chambers v. NASCO, Inc., 501 U. S. 32, 111 S.Ct. 2123 (1991). That case clearly stated inherent authority could only be used if Rule 11 was not up to the task. There is no suggestion that Rule 9011 was not up to the task in this case. They failed to meet the safe harbor provision. A resort to inherent authority is only being requested because the Scotts failed to meet Rule 9011 requirements. The only reasons given are reasons covered by Rule 9011 that the lawsuit was frivolous or brought for an improper purpose. Inherent authority cannot be used to do something Rule 11 clearly covers according to Chambers, otherwise there would be no purpose for Rule 11. See Hutchinson v. Pfeil, 208 F.3d 1180, 1196-87 (10th Cir 2000).

There are a number of other factors regarding the use of the court's inherent authority as a basis for awarding attorney's fees in favor of one party against another. It is said that any such award cannot be used to deter or create fear or to prevent parties from pursuing colorable and just claims. Therefore, to ensure that does not happen, courts have declined to uphold awards unless bad faith with great specificity is outlined in Findings of Fact and that bad faith has to be subjective bad faith based on clear and convincing evidence, showing the actions taken are entirely without color and are taken entirely for reasons of harassment or delay or some other improper purpose. Dow Chem. Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986); see also Schlaifer Nance, 194 F. 3d at 338 (the court's factual findings of bad faith must be characterized by a high degree of specificity.); MacDraw, Inc. v. CIT Group Equip. Fin., 73 F.3d 1253, 1262 (2d. Cir. 1996) (vacating imposition of sanctions because the district court engaged in no detailed considerations of what conduct by plaintiff's counsel satisfied the bad faith requirement). Certainly, the Plaintiffs' actions of opposing discharge where the Scotts participated heavily in a lot of questionable activity is not the kind of activity the court should sanction.

The use of inherent power of the court to award attorney's fees after a case is dismissed is also not allowed. Prosser v. Prosser, 186 P.30 403, 406 (3rd Cir. 1999). The reasons is that sanctions ideally operate as an instructional tool to deter parties and attorneys whose conduct has not met requisite professional standards from continuing on their wayward course of conduct. This exemplary function is ill served if it is imposed after a case is dismissed. See also Mellon Bank Corp. v. First Union Real Estate, 951 F. 2d 1399, 1413 (3d Cir.1991); Hilmon Co. v. Hyatt Int'l, 899 F.2d 250, 251 n.1 (3d Cir.1990).

The use of inherent authority also requires notice. The party against whom sanctions are being considered is entitled to notice of the legal rule on which sanctions will be based, the reasons for the sanctions, and the form of potential sanctions. Prosser, *supra*; "(a)n attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific changes." Sakon v. Andreo, 119 F.3 109, 114 (2d Cir. 1997). Even the case cited by the Scotts, Schwartz v. Kujawa, 256 B.R. 598, 609 13 BAP 8th Cir. 2009, affirmed in part at 270 F.3d 578 (8th Cir. 2001) is exemplary of a lawyer who had plenty of notice early on.

No notice has ever been given in this case to date. The Court was concerned that the Complaint had lacked proper allegations of non-dischargeability and was prolixic and hard to understand, but never mentioned or gave any warnings that it was considering sanctions in the form of awarding attorney's fees under its inherent authority as required. In fact, a lot of the rulings were in favor of Plaintiffs allowing them to amend. There is nothing in the record that the Court was going to use its inherent authority to fine the Murrins. In fact, amending a

- 11 -

Complaint is the proper thing to do if it is allowed, it is consistent with the duty of a lawyer to be diligent to attempt to cure correct or improve it. The most the court advised Murrin about faulty pleadings was that another chance to amend was not going to be given. That is not a warning of the Court's intent to use its inherent power to monetarily sanction a party. Mr. Murrin was congenial and affable in offering to be more specific, tighten up, and shorten the Complaint. Even the Court in its January 15, 2008, Order and later in its April 10, 2009 Order, allowing Defendants to raise sanctions before it entered judgment on the matter, did not speak in terms of inherent authority, but only in terms of Rule 9011 and as to that basis for the suggested right to pursue their attorney's fees. The only case cited for the use of inherent authority is <u>Schwartz v. Kujawa</u>. That case involved a person who committed shocking behavior, proclaimed early and frequently, spanning years. He filed several pleadings that were sanctionable and his conduct went past the signing of pleadings covered by Rule 9011 such as double billing, and orchestrating the bankruptcy. In the end, the <u>Schwartz</u> bankruptcy panel in using inherent power to sanction the lawyer emphasized that the use of inherent power to impose sanctions should not be invoked lightly. And then on appeal the 8th circuit reversed the entire $100,000 sanction and disallowed the use of the inherent power to justify any sanctions in this case. It quoted <u>Hutchinson v. Pfiel</u>, 208 F 3d 1180, 1186-87 (10th Cir 2000) as authority for "declining to affirm procedurally defective Rule 11 order by relying on inherent authority."

## CONCLUSION

Utilizing Rule 9011 in this case, after the dismissal of the case, without giving Plaintiffs the twenty-one day "safe harbor" makes it absolutely impossible under that Rule for Defendants to obtain an award of attorney's fees and costs against Plaintiffs.

Resorting to inherent powers of the court at the last minute for the same kind of things is not allowed and would be a serious violation of Plaintiffs' rights of due process, and cannot also be allowed.

The fact of the matter is that it would be a unique situation in American jurisprudence if a party is sanctioned because he tried and failed to remedy an insufficient Complaint that was deemed deficient. If this becomes the case, it would impose an inconceivable, chilling, effect on the bar at a level not yet seen. It would interfere and change forever the independence of the bar including person acting pro se and turn upside down the requirement that attorneys represent their clients and themselves zealously.

Based upon what is currently occurring in the financial arena, with the numerous instances of mortgage fraud and ponzi schemes, it is all the more important that perpetrators of fraud not be able to commit fraud and discharge the rights of their victims from holding them accountable. There is a need to root out this kind of behavior. To utilize the chilling effect of sanctions against an attorney or party who was defrauded by a ponzi scheme and mortgage fraud, in a complicated conspiratorial activity, would be sending the wrong message which would not be good for the public and society as a whole. The legal system should be a forum for dispute resolution which encourages zealous representation and zealous pursuit of one's claim.

The Court should not entertain and cannot entertain Defendants' Motion for Sanctions.


Dated: 5/4/09                                    /s/ John O. Murrin
                                                 John O. Murrin, III (7679X)
                                                 Attorney for Plaintiff
                                                 2682 270th St.
                                                 Madison, MN 56256
                                                 (952) 994-1066

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

In Re:
Jason J. Scott and Clichelle C. Scott,

     Debtors,

John Murrin and DeVonna Murrin

     Plaintiffs

   v.

Clichelle C. Scott and
Jason J. Scott,

     Defendants.

**CERTIFICATE OF SERVICE**

Adv. Case No: 07-03110
Bky. Case No: 07-30643

I hereby certify that on May 4, 2009, I caused the following documents:

    Memorandum of Law In Opposition to Motion for Sanctions

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

    William G. Selman III    wgselman@msn.com

I further certify that I caused a copy of the foregoing documents and the notice of electronic filing to be mailed by first class mail, postage paid, to the following non-ECF participants:

    William G. Selman III, Attorney at Law, 250 Second Ave. S., Suite 205, Minneapolis, MN 55401

    Jason Scott and Clichelle Scott, 7542 Nature Path, Woodbury, MN 55125

Dated:  May 4, 2009                        /s/ John O. Murrin
                                                            John O. Murrin